# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 15-1477
### Filed: June 28, 2016

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| DIANE C. PERL, | |
|       Petitioner, | Finding of Fact; Influenza ("Flu") |
| v. | Vaccine; Shoulder Injury Related to |
| | Vaccine Administration ("SIRVA"); |
| SECRETARY OF HEALTH | Adhesive Capsulitis; Location of |
| AND HUMAN SERVICES, | Vaccination; Special Processing Unit |
| | ("SPU") |
|       Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Matthew F. Belanger*, Faraci Lange, LLP, Rochester, NY, for petitioner.
*Robert Paul Coleman, III*, U.S. Department of Justice, Washington, DC, for respondent.

## ORDER AND RULING ON FACTS[1]– SPECIAL PROCESSING UNIT

**Dorsey,** Chief Special Master:

      On December 7, 2015, Diane C. Perl ("petitioner" or "Ms. Perl") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, et seq., (the "Vaccine Act" or "Program"). Petitioner alleges that she suffered an injury to her left shoulder, including adhesive capsulitis and Shoulder Injury Related to Vaccine Administration ("SIRVA"), as a result of an influenza ("flu") vaccine she received on October 9, 2013. Petition at 1. The case was assigned to the Special Processing Unit ("SPU").

      Prompting this fact ruling is a status report filed by respondent on May 25, 2016, requesting a written determination of "whether petitioner has proven by a preponderance of the evidence that a covered vaccine was administered to her left arm." After a review of the record as a whole, and for the reasons set forth below, the undersigned finds that there is preponderant evidence to find that Ms. Perl received her October 9, 2013 flu vaccination (a covered vaccine) in her left shoulder.

---

[1] Because this unpublished order and ruling contains a reasoned explanation for the action in this case, the undersigned intends to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012)(Federal Management and Promotion of Electronic Government Services). In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

## I.   Procedural History

In the petition filed on December 7, 2015, Ms. Perl asserts that she received a flu vaccine in her left arm on October 9, 2013, at the office of her primary care physician, Hamburg Family Medicine.  Petition at 2, ¶6.  She also filed seven medical record exhibits on December 8, 2015.  Petitioner's exhibit two, page one, documents that Ms. Perl received both a pneumococcal vaccine and an influenza vaccine on October 9, 2013, although the record is silent as to the specific location of the vaccines.  Petitioner's Exhibit ("Pet. Ex.") 2 at 1.  Also on December 8, 2015, petitioner filed a Statement of Completion signifying that she believed that all relevant medical records have been filed.

An initial status conference was held on January 21, 2106, during which respondent requested additional time to review Ms. Perl's records in order to make a recommendation in this case.  On April 8, 2016, respondent filed a status report stating that petitioner received two vaccines on October 9, 2013, but that the medical records do not identify in which arm petitioner received each of these vaccines, nor do they identify the type of pneumococcal vaccine Ms. Perl received.  Respondent requested that petitioner file additional records to clarify these issues.  On April 15, 016, an order was issued for petitioner to file any additional information to support her claim that she received the flu vaccine in her left arm and clarifying which pneumococcal vaccine she received.  *See* Order, dated 4/15/2016.

To provide additional clarification, Ms. Perl filed a supplemental affidavit on April 25, 2016, stating that she went to her primary care physician specifically to receive a flu vaccine.  Pet. Ex. 8 at 1.  During this visit, Ms. Perl states that her physician also recommended that she receive a pneumococcal vaccine, and she agreed.  *Id.* at 1, ¶2.  Ms. Perl states that a nurse administered the flu vaccine in her left shoulder and the pneumococcal vaccine in her right shoulder.  *Id.* at 2, ¶4.  Ms. Perl states that her left shoulder "was noticeably sore right after the vaccination but within hours, [her] pain was a 10/10 and was so intense that it interfered with [her] ability to sleep and function normally."  *Id.*

Ms. Perl also filed the information sheets for the influenza and pneumococcal vaccines that she received from her primary care physician (Pet. Exs. 9-10) as well as all the records from her primary care physician, Hamburg Family Medicine (Pet. Ex. 11).  The information sheet petitioner filed was for the polysaccharide version of the pneumococcal vaccine.[2]

On May 25, 2015, respondent filed a status report requesting "that the Chief Special Master issue a decision on whether petitioner has proven by a preponderance

---

[2] Only pneumococcal conjugate vaccines are covered by the Vaccine Act.  The pneumococcal polysaccharide vaccine is not.  *See Morrison v. Sec'y of Health & Human Servs.*, No. 04-1683V, 2005 WL 2008245, at *1 (Fed. Cl. Spec. Mstr. July 26, 2005) (describing how and when pneumococcal conjugate vaccines were added to the Vaccine Table).

of the evidence that a covered vaccine was administered in her left arm." Status Report, filed 5/25/2016. This ruling addresses respondent's request.

## II.    Factual History

On October 9, 2013, Ms. Perl presented to her primary care physician for a routine complete physical examination. She also requested an influenza ("flu") vaccine. Pet. Ex. 8 at 1. On the advice and recommendation of her primary care physician, Ms. Perl received the pneumococcal vaccine in addition to the flu vaccine. *Id.*, Pet. Ex. 2 at 12. Petitioner states that a nurse administered the flu vaccine in her left shoulder and the pneumococcal vaccine in her right shoulder. *Id.* at 2 ¶4. Ms. Perl filed the information sheets for the vaccines that she received during this visit as exhibits 9 and 10. Exhibit 9 is an information sheet for the influenza vaccine and exhibit 10 is the information for a pneumococcal polysaccharide vaccine.

Ms. Perl states her left shoulder "was noticeably sore right after the vaccination but within hours, [her] pain was 10/10 and was so intense that it interfered with [her] ability to sleep and function normally." Pet. Ex. 8 at 2, ¶4. She states that in addition to the sharp burning pain, she also experienced a tightening of the muscles of her left shoulder with numbness and tingling extending into her left hand and fingers. *Id*.

Ms. Perl presented to her primary care physician on November 20, 2013, after her left shoulder pain persisted for approximately one month. Petition at 3, ¶8, Pet. Ex. 1 at 2, ¶5. Ms. Perl reported to her physician that her pain began after receiving her flu vaccine one month ago, but that her pain was slowly improving. Pet. Ex. 3 at 39. In her affidavit, Ms. Perl states she told her physician that she had never had a problem with her left shoulder until her October 9, 2013 flu shot, and since that time, she experienced intense pain, weakness and a limited range of motion in her left shoulder. Pet. Ex. 1 at 2. Ms. Perl was instructed by her physician to perform range of motion ("ROM") exercises at home and to return to the office in two to three weeks if her shoulder pain did not improve.

Ms. Perl returned to her primary care physician on December 30, 2013. Pet. Ex. 3 at 35. She complained of continuing pain in her left shoulder that extended into her left bicep area. *Id.* Ms. Perl again reported that the pain in her left shoulder had been occurring for the past two to three months ever since she received her flu vaccine. *Id.* She stated that she had been performing her ROM exercises with no relief. *Id.* Her physician ordered an x-ray and an MRI. *Id.* at 36.

The same day, December 30, 2013, petitioner underwent an x-ray of her left shoulder which revealed bony osteopenia with degenerative changes in her left shoulder. Pet. Ex. 3 at 34. A January 10, 2014 MRI of Ms. Perl's left shoulder revealed a "partial tear of the distal supraspinatus tendon… likely full thickness… otherwise unremarkable MRI of the left shoulder." *Id.* at 31. As a result of the MRI findings, Ms. Perl was referred to Excelsior Orthopedics for a consultation. Pet. Ex. 1 at 2, ¶8.

On March 17, 2014, Ms. Perl presented to Excelsior Orthopedics with a chief complaint of left shoulder pain. Pet. Ex. 4 at 1. Ms. Perl reported that her left shoulder pain "started October 9, 2013 from her flu shot." *Id.* After a physical exam and a review of the x-ray and MRI reports, Ms. Perl was assessed with adhesive capsulitis and sprain/strain of her left rotator cuff. *Id.* at 3. The records note that Ms. Perl was to have her left shoulder injected with cortisone, to undergo physical therapy, and to return in two to three months for a follow up. *Id.* The next day, on March 18, 2014, Ms. Perl returned to her primary care physician and received a cortisone injection in her left shoulder. Pet. Ex. 3 at 29.

On March 20, 2014, Ms. Perl underwent a diagnostic real-time musculoskeletal ultrasound for her left shoulder. Pet. Ex. 4 at 14. The results were consistent with her January 10, 2014 MRI. The report also noted the restricted range of motion "in the area of the coracohumeral ligament suggestive of elements of adhesive capsulitis." *Id*.

Ms. Perl began physical therapy at Sports Focus Therapy on April 1, 2014. Pet. Ex. 5. She described her injury as left shoulder pain resulting from a flu shot she received on October 9, 2013. *Id.* at 5. Ms. Perl continued with physical therapy until September 2014, when she was released because she had reached maximum therapeutic benefits. *Id*. at 2.

Ms. Perl continued to be seen at Excelsior Orthopedics for continued pain in her left shoulder. During a July 7, 2014 examination, it was noted that the range of motion in her left shoulder was limited and she received another steroid injection. Pet. Ex. 4 at 15-16.

Ms. Perl continued with her home exercises and returned to Excelsior Orthopedics on April 27, 2015, reporting that she was continuing to have pain in her left shoulder and that it prevented her from performing simple tasks such as dressing herself. Pet Ex. 4 at 24. She also reported that overuse caused her aching pain into the muscles of her left arm. *Id*. A new MRI of her left shoulder was ordered. *Id*. at 25.

Petitioner underwent a second MRI on May 5, 2015. Pet. Ex. 4 at 27. The MRI showed a "[s]imilar appearing" full thickness tear of the supraspinatus tendon in addition to the infraspinatus muscle showing volume loss*. Id.* On June 22, 2015, Ms. Perl returned to Excelsior to review the MRI results with her physician. *Id.* at 28. She informed her physician that she was not interested in surgery and wanted to explore the option of a platelet rich plasma ("PRP") injection. *Id.* at 29. The last records filed are dated August 24, 2015, where Ms. Perl states that she would like to proceed with the PRP injection. Id. at 33.

### III. Discussion

#### a. Applicable Legal Standard.

A petitioner must prove, by a preponderance of the evidence, the factual circumstances surrounding her claim. 42 U.S.C. § 300aa–13(a)(1)(A). To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed.Cir.1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Human Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998).)

#### b. Evaluation of the Evidence

Here, the undersigned finds that there is preponderant evidence to support Ms. Perl's claim that the flu vaccine she received on October 9, 2013, was administered to her left shoulder.

Although the immunization record is silent regarding which vaccine was administered to petitioner's arm, all of the other evidence in the record consistently references that a flu vaccine was administered to Ms. Perl's left arm, just as she alleges. The undersigned observes that from petitioner's initial treatment forward, she consistently reported to health care providers that her left shoulder problems began after her October 9, 2013 flu vaccination. Indeed, no record makes any reference to the contrary. Ms. Perl was evaluated multiple times for an injury to her left shoulder and there is objective evidence that Ms. Perl, in fact, had an injury to her left shoulder that was not present prior to her October 9, 2013 flu vaccination. The undersigned accepts petitioner's affidavit to be a credible account of the facts surrounding her vaccination, having no reason to doubt the truthfulness of the assertions contained therein.

### IV. Conclusion

**Thus, the undersigned finds, based on the record as a whole, that petitioner received a flu vaccine in her left shoulder on October 9, 2013, as alleged in the petition.**

**The parties are encouraged to consider an informal resolution of this claim. Petitioner shall file a joint status report by <u>Friday, July 29, 2016</u>, updating the court on the status of the parties' settlement discussions.**

**IT IS SO ORDERED.**

**s/Nora Beth Dorsey**
Nora Beth Dorsey
Chief Special Master
